# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| EMERALD CASINO, INC., | ) | Case No. 02-22977 |
| | ) | Honorable Deborah L. Thorne |
| Debtor. | ) | |
| | ) | **Hearing Date:  September 13, 2016 at 10:00 a.m. (CT)** |
| | ) | **Objection Deadline:  August 23, 2016** |

## SUMMARY OF FINAL FEE APPLICATION OF
## KIRKLAND & ELLIS LLP FOR ALLOWANCE OF ADMINISTRATIVE CLAIM
## FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE
## INTERIM FEE PERIOD SEPTEMBER 10, 2002 THROUGH JANUARY 31, 2008

In accordance with the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Bankruptcy Rules") and the *Order Setting Deadline for Filing Requests for Allowance of Chapter 11 Administrative Expenses, Including Chapter 11 Final Fee Applications* [Docket No. 2192], Kirkland & Ellis LLP ("K&E"), attorneys for the above-captioned debtor in connection with its chapter 11 case prior to January 31, 2008 (the "Debtor"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this summary is attached (the "Fee Application")[1] for the period from September 10, 2002, through and including January 31, 2008 (the "Fee Period").

### GENERAL INFORMATION

| | |
|---|---|
| Name of Applicant: | Kirkland & Ellis LLP |
| Authorized to Provide Services to: | Emerald Casino, Inc. |
| Petition Date: | September 10, 2002 |
| Date of Order Authorizing the Debtor to Retain K&E: | October 10, 2002, *nunc pro tunc* to September 10, 2002 |

---

[1] Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in this Fee Application.

| SUMMARY OF FEES AND EXPENSES SOUGHT IN THE FEE APPLICATION | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | September 10, 2002, through and including January 31, 2008 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $6,890,744.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $271,175.81 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $7,161,920.31 |

KE 41892452

Chicago, Illinois
Date: June 27, 2016

_/s/ Marc Kieselstein_
James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
Gregory F. Pesce
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

_Counsel to Emerald Casino, Inc.
Prior to January 31, 2008_

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| EMERALD CASINO, INC., | ) | Case No. 02-22977 |
| | ) | Honorable Deborah L. Thorne |
| Debtor. | ) | |
| | ) | **Hearing Date:  September 13, 2016 at 10:00 a.m. (CT)** |
| | ) | **Objection Deadline:  August 23, 2016** |

**FINAL FEE APPLICATION OF KIRKLAND & ELLIS LLP**
**FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE**
**INTERIM FEE PERIOD SEPTEMBER 10, 2002 THROUGH JANUARY 31, 2008**

## Introduction

1.      On June 13, 2002 (the "Petition Date"), an involuntary chapter 7 petition was filed against Emerald Casino, Inc. in the United States Bankruptcy Court for the Northern District of Illinois (the "Court").  On September 10, 2002 (the "Order for Relief Date"), the Court entered an order for relief and converted the case from an involuntary chapter 7 case to a voluntary chapter 11 case.  On October 10, 2002, the Court authorized Emerald Casino, Inc., as a debtor and debtor in possession (the "Debtor"), to retain Kirkland & Ellis LLP ("K&E") as its counsel in its chapter 11 case, *nunc pro tunc* to September 10, 2002.

2.      K&E thereafter represented the Debtor, which owned and operated casino and gaming properties, in all aspects of its chapter 11 restructuring, including an array of complicated corporate, financial, litigation, taxation matters.  K&E's substantial efforts on behalf of the Debtor included activities related to the Debtor's sale process—which culminated in a live auction on March 10, 2004—and confirmation of the *Debtor's and Committee's Joint Fifth*

*Amended and Restated Chapter 11 Plan (Modified as of July 20, 2004)* [Docket No. 1362] (the "Plan") on July 22, 2004.

3.       During the nearly four years following confirmation, K&E represented the Debtor in connection with its efforts to consummate the Plan.   K&E post-confirmation activities included, among other things, working with the Debtor and its other professionals in an effort to obtain certain regulatory and gaming approvals, resolving significant claims against the estate, negotiating post-confirmation settlements with various creditors and other parties in interest, and addressing myriad corporate, financial, and other matters related to consummation of the Plan. Ultimately, notwithstanding K&E's significant efforts, the Debtor did not consummate the Plan due to certain regulatory issues.   On February 13, 2008, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee") filed a motion to convert the Debtor's chapter 11 case to a liquidation under chapter 7 of the Bankruptcy Code.   On March 19, 2008, the Court granted the motion and converted the Debtor's case back to a chapter 7 case.

4.       During the Debtor's chapter 11 case, K&E effectively subsidizing the Debtor's chapter 11 restructuring.   In accordance with the *Order Setting Deadline for Filing Requests for Allowance of Chapter 11 Administrative Expenses, Including Chapter 11 Final Fee Applications* [Docket No. 2192], K&E now submits this final fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $6,890,744.50 and reimbursement of actual and necessary expenses in the amount of $271,175.81 that K&E incurred in connection with such services for the period from September 10, 2002, through and including January 31, 2008 (the "Fee Period").

5.       In support of this Fee Application, K&E submits the declaration of Marc Kieselstein, the president of Marc Kieselstein, P.C., a partner of Kirkland & Ellis LLP

2

(the "Kieselstein Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference.  In further support of this Fee Application, K&E respectfully states as follows.

## Jurisdiction

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are section 330 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Bankruptcy Rules").

## Retention of and Continuing Disinterestedness of K&E

9.      On the Petition Date, the Village of Rosemont, Degen & Rosato Construction Co., Inc./Power Construction Co., LLC, Christopher R. Burke Engineering, Ltd., Testing Service Corporation and Mackie Consultants (the "Petitioning Creditors") filed an involuntary petition (the "Involuntary Petition") for relief under chapter 7 of the Bankruptcy Code was filed against the Debtor.

10.      On the Order for Relief Date, the Court entered an order converting the Debtor's chapter 7 case to a case under chapter 11 of the Bankruptcy Code and granting relief with respect to the petition.

11.      Following the conversion of the Involuntary Petition to a voluntary case on the Order for Relief Date, the Debtor continued to operate its business and manage its property under sections 1107(a) and 1108 of the Bankruptcy Code.

12.      On October 10, 2002, the Debtor was authorized to retain K&E as its counsel, effective *nunc pro tunc* to the Relief Date, with regard to the filing and prosecution of the

3

chapter 11 case and all related matters (the "Retention Order").  The Retention Order authorized

the Debtor to compensate K&E at K&E's hourly rates charged for services of this type and to be

reimbursed for actual and necessary out-of-pocket expenses incurred, subject to application to

this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy

Rules, and orders of this Court.

13.    K&E does not hold or represent any interest adverse to the estate, and is a

disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as

modified by section 1107(b) of the Bankruptcy Code, as disclosed in the Affidavit of James

H.M. Sprayregen, P.C., in Support of Application to Retain of K&E LLP as Counsel for the

Debtor Under 11 U.S.C. § 327(a) (the "Original Affidavit"), filed on September 27, 2002.  K&E

filed supplemental affidavits on June 13, 2003, September 16, 2003, October 21, 2003, August

12, 2004, October 28, 2004, March 17, 2006, and June 16, 2006 (collectively, the "Supplemental

Affidavits," and, together with the Original Affidavit, the "Affidavits").

14.    K&E may have in the past represented, may currently represent, and likely in the

future will represent parties-in-interest in connection with matters unrelated to the Debtor and

this case.  In the Affidavits, K&E disclosed its connections to parties-in-interest that it has been

able to ascertain using its reasonable efforts.

15.    K&E performed the services for which it is seeking compensation on behalf of or

for the Debtor and its estate, and not on behalf of any committee, creditor, or other person.

16.    Except to the extent of payments received in accordance with any prior Court

order, K&E has received no payment and no promises for payment from any source for services

rendered or to be rendered in any capacity whatsoever in connection with this case.

4

17.     Pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, K&E has

not shared, nor has K&E agreed to share any compensation it has received or may receive with

another party or person other than with the partners, counsel, and associates of K&E, or any

compensation another person or party has received or may receive.

### Fees and Expenses Incurred During Fee Period

**A.    Customary Billing Disclosures**.

18.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the

work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly

rates and corresponding rate structure utilized by K&E in the Debtor's chapter 11 case is

equivalent to the hourly rates and corresponding rate structure used by K&E for other

restructuring matters, as well as similar complex corporate, securities, and litigation matters

whether in court or otherwise, regardless of whether a fee application is required.  The rates and

rate structure reflect that such restructuring and other complex matters typically are national in

scope and typically involve great complexity, high stakes, and severe time pressures.

**B.    Fees Incurred During Fee Period**.

19.     In the ordinary course of K&E's practice, K&E maintains computerized records

of the time expended to render the professional services required by the Debtor and its estate.

For the convenience of the Court and all parties in interest, attached hereto as **Exhibit C** is a

summary of fees incurred and hours expended during the Fee Period, setting forth the following

information:

- the name of each attorney and paraprofessional for whose work on the Debtor's

chapter 11 case compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

KE 41892452

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at K&E's current billing rates; and

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the Fee Application.

**C.    Expenses Incurred During Fee Period**.

20.    In the ordinary course of K&E's practice, K&E maintains a record of expenses incurred in the rendition of the professional services required by the Debtor and its estate and for which reimbursement is sought.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which K&E is seeking reimbursement.

## Summary of Legal Services Rendered During the Fee Period

21.    As discussed above, during the Fee Period, K&E provided extensive and important professional services to the Debtor in connection with the Debtor's chapter 11 case. These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to the Debtor's chapter 11 case and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

22.    To provide a meaningful summary of K&E's services provided on behalf of the Debtor and its estate, K&E has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with the chapter 11

6

case.  The following is a summary of the fees and hours billed for each Matter Category in the

Fee Period.[1]

| Matter Number | Matter Description | Total Billed Hours | Total Fees Requested |
|---|---|---|---|
| 3 | Adversary Proceedings | 3,758.10 | $1,238,206.50 |
| 4 | Asset Disposition | 1,235.80 | $507,006.00 |
| 5 | Automatic Stay Matters | 25.30 | $5,872.50 |
| 7 | Case Administration | 1,671.80 | $321,681.00 |
| 8 | Cash, Collateral/DIP Financing | 10.50 | $5,496.50 |
| 9 | Claims Estimate, Objection and Resolution | 561.60 | $206,783.00 |
| 10 | Corporate and Securities Matters | 9.50 | $4,975.00 |
| 11 | Disclosure/Plan/Confirmation | 4,333.40 | $1,845,709.50 |
| 13 | Fee/Employment Applications | 353.60 | $120,760.00 |
| 14 | K&E Fee Applications and Monthly Statement | 736.70 | $181,632.00 |
| 15 | Leases, Assumption and Rejection | 21.80 | $5,761.00 |
| 16 | Schedules/Statement of Financial Affairs | 33.80 | $11,521.00 |
| 17 | Organizational and Administrative Pleading | 45.30 | $14,783.50 |
| 18 | Administrative Proceedings | 302.60 | $105,657.50 |
| 19 | Post-Confirmation / Consummation | 5,298.20 | $2,384,675.50 |
| | **Total Fees** | **18,398.00** | **$6,960,520.50** |
| | Court Disallowance | | ($69,776.00) |
| | **Total Fees Requested for Final Approval** | | **$6,890,744.50** |

23.     The following is a summary, by Matter Category, of the most significant

professional services provided by K&E during the Fee Period.  This summary is organized in

accordance with K&E's internal system of matter numbers.   The detailed descriptions

demonstrate that K&E was heavily involved in performing services for the Debtor on a daily

basis, often including night and weekend work, to meet the needs of the Debtor's estate in the

Debtor's chapter 11 case.  A schedule setting forth a description of the Matter Categories utilized

in this case, the number of hours expended by K&E partners, associates, and paraprofessionals

by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit E**.

---

[1]     In certain instances K&E may have billed the same amount of fees, but different amount of hours to different matter categories.  This difference is the result of different staffing of each such matter category.

KE 41892452

(a)      **Adversary Proceedings [Matter No. 3]**

Total Fees:      $1,238,206.50
Total Hours    3,758.10

24.     This Matter Category includes time spent by K&E professionals and

paraprofessionals related to numerous lawsuits and other contested matters involving the Debtor,

including, among other things:

(i)      litigating the Illinois Gaming Board's (the "IGB") effort to revoke the Debtor's gaming license, including filing a motion for an injunction to stay the IGB's efforts to do so pursuant to section 362 of the Bankruptcy Code and certain appeals related thereto;

(ii)     litigating various ancillary matters related to certain settlement agreements between the Debtor and the IGB and whether the IGB exceeded its statutory authority by entering into such agreements;

(iii)    litigating a $45-million claim asserted by the Village of Rosemont regarding funding provided by the Village of Rosemont to the Debtor for a parking lot located that was intended to serve the Debtor's casino;

(iv)     litigating disputes with various shareholders regarding certain claims asserted by shareholders against the Debtor related to, among other things, the manner in which the Debtor solicited equity investments in its business from certain third parties and certain matters related thereto;

(v)      commencing an action to challenge the Illinois Riverboat Gaming Act's provisions permitting a casino company from moving its gaming license and the applicability of such provisions to the Debtor's effort to relocate its casino to Rosemont, Illinois; and

(vi)     challenging the procedures implemented by the IGB during proceedings related to an effort by the IGB to revoke the Debtor's gaming license.

25.     In addition, K&E LLP spent significant time, among other things:

(i)      preparing for dozens of hearings held in the chapter 11 case;

(ii)     reviewing and revising various motions and proposed orders, including motions seeking "first-day" and "second-day" relief as described above;

8

(iii)   negotiating with and resolving issues raised by the Debtor's stakeholders with respect to various requests for relief; and

(iv)   corresponding and participating in telephone conferences with the Debtor's personnel regarding the proposed forms of various orders and the Debtor's compliance with the Bankruptcy Code and Bankruptcy Rules.

**(b)   Asset Disposition [Matter No. 4]**

Total Fees:    $507,006.00
Total Hours:   1,235.80

26.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to the sale transaction contemplated by the Debtor's Plan, including:

(i)    assisting the Debtor in marketing the Debtor's assets;

(ii)   negotiating and drafting various documents related to the sale transaction, including non-disclosure and confidentiality agreements with multiple potentially interested parties;

(iii)  assisting Rothschild Inc. in disseminating confidential information related to the sale transaction;

(iv)   responding to diligence requests from potentially interested parties;

(v)    researching various legal and regulatory issues related to the sale transaction; and

(vi)   corresponding and participating in numerous telephone conferences and meetings with potentially interested parties in regard to the foregoing efforts.

**(c)   Automatic Stay Matters [Matter No. 6]**

Total Fees:    $5,872.50
Total Hours:   25.30

27.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to the imposition of the automatic stay. Specifically, K&E attorneys and paraprofessionals spent time corresponding with the Debtor and the Debtor's vendors regarding the chapter 11 case and the effect of the automatic stay and

9

responding to inquiries and drafting various pleadings regarding requests to lift or modify the automatic stay.

(d)     **Case Administration [Matter No. 7]**

Total Fees:     $321,681.00
Total Hours:   1,671.80

28.     This Subject Matter includes the time K&E attorneys and paraprofessionals spent on the general administration of the chapter 11 case during the chapter 11 case.  To the extent possible, K&E's paraprofessionals attended to these general administrative matters.

29.     The Debtor filed numerous pleadings in the chapter 11 case during the chapter 11 case.  In connection with these filings, K&E typically prepared notices of motions, proposed orders, exhibits, and schedules, as applicable. Additionally, K&E coordinated the delivery of such pleadings to the Court and to the U.S. Trustee.

30.     K&E paraprofessionals monitored the dockets for the chapter 11 case to track the filing of pleadings and to remain apprised of critical dates, including those related to such pleadings.  For each pleading filed, K&E paraprofessionals ensured that the appropriate attorneys and personnel of the Debtor and the Debtor's other advisors remained apprised of the filed documents and relevant objection and response deadlines, hearing dates, and other critical dates.

31.     The Debtor's chapter 11 case were especially complex, requiring coordination of detailed documents and analyses across K&E professionals, the Debtor, and the Debtor's other advisors. K&E utilizes certain processes and practices to ensure the effective and efficient management of legal issues in the chapter 11 case.

10

**(e)**     **Cash Collateral/DIP Financing [Matter No. 8]**

Total Fees:     $5,496.50
Total Hours:   10.50

32.      This Matter Category includes time spent by K&E securing the consensual use of cash collateral and approval of the Debtor's DIP facility.  More specifically, on August 15, 2002, the Court entered an order authorizing the Debtor to enter into a credit agreement for $5 million with its largest shareholder, Donald F. Flynn, as the lender.  The purpose of the credit agreement was to allow the Debtor to pay certain prepetition obligations to the Debtor's professionals involved in various litigation matters related to the Debtor and its chapter 11 case.   On October 31, 2002, the Court entered an order authorizing the Debtor to obtain postpetition financing from Donald F. Flynn on an administrative expense basis.  The financing consisted of a line of credit with a maximum amount of approximately $5.0 million.  These efforts were essential to providing the Debtor with the necessary liquidity to fund the Debtor's operations during the Debtor's chapter 11 case.

**(f)**     **Claims Estimate, Objection and Resolution [Matter No. 9]**

Total Fees:     $206,783.00
Total Hours:   561.60

33.      This Matter Category includes time K&E attorneys and paraprofessionals spent on matters related to claims administration and claims-related issues.   Specifically, K&E attorneys and paraprofessionals spent time drafting a motion seeking entry of a bar date with respect to general unsecured claims and obtaining entry of an order establishing a bar date, which order the Court entered on October 10, 2002.  Approximately 100 proofs of claim and interest were filed on or prior to the December 26, 2002 bar date, which proofs of claim and interest K&E LLP thereafter reviews and assessed.

11

(g)     **Corporate and Securities Matters [Matter No. 10]**

    Total Fees:     $4,975.00
    Total Hours:   9.50

34.     This  Matter  Category  includes  time  spent  by  K&E  attorneys  and

paraprofessionals advising the Debtor on various corporate and securities matters.  Specifically,

K&E attorneys and paraprofessionals spent time preparing for and participating in meetings held

by the Debtor's board of directors and providing the Debtor with general corporate governance

and operational advice on a day-to-day basis.

(h)     **Disclosure/Plan/Confirmation [Matter No. 11]**

    Total Fees:     $1,845,709.50
    Total Hours:   4,333.40

35.     This  subject  matter  includes  legal  services  rendered  in  connection  with  the

confirmation  of  the  Plan  and  approval  of  a  related  disclosure  statement  (the  "Disclosure

Statement").  More specifically, on July 3, 2003, the Court entered an order pursuant to which

the Debtor was authorized to conduct a sale of substantially all of its assets.  Pursuant to the sale

procedures order, binding proposals were due on August 1, 2003.

36.     The Debtor received multiple bids prior to the bid deadline.  However, in light of

the Court's denial of the Debtor's motion for a preliminary injunction enjoining the prosecution

of the IGB's effort to revoke the Debtor's gaming license, the Debtor, in its business judgment,

elected  not  to  proceed  with  the  sale  process  as  provided  by  the  Court-approved  bidding

procedures.  On November 17, 2003, the Official Committee of Unsecured Creditors (the

"Committee") filed a motion to resume the sale process on a nonconsensual basis.  The Debtor

objected to the Committee's sale motion on various grounds, including the fact that Committee

had no legal basis for filing its motion and lacked standing to compel the Debtor to sell estate

property.  On November 24, 2003, the Debtor filed its own motion to resume the sale process.

12

The motion—which was ultimately supported by the Committee and the IGB—was approved by the Bankruptcy Court on December 30, 2003, thereby mooting the Committee's sale motion.

37.     In early January 2004, Rothschild Inc. resumed contact with potential bidders. On January 19, 2004, seven parties submitted binding proposals to acquire the Debtor. Rothschild Inc. subsequently delivered to the IGB a summary analysis of each binding proposal. On February 5, 2004, the IGB held a public session to allow parties in interest to comment on the proposals. On February 25, 2004, the IGB identified the three proposals from bidders that would be invited to make full presentations of their proposals to the IGB: Harrah's Entertainment, Inc.; Isle of Capri Casinos, Inc.; and Midwest Gaming & Entertainment, LLC. On March 1, 2004, the final bidders presented their binding proposals at a public session of the IGB. On March 4, 2004, the IGB held an open session to receive public comment on the final bidders and their binding proposals. On March 5, 2004, the IGB selected the Harrah's Entertainment, Inc. bid as the leading bidder at the commencement of the auction among the other three final bidders.

38.     On March 10, 2004, an auction was conducted at K&E LLP's offices with Todd Snyder of Rothschild, Inc. acting as moderator. Following the auction, Rothschild Inc. recommended that the IGB select Isle of Capri Casinos, Inc.—which submitted a bid that contemplated cash consideration of over $518 million and significant non-cash consideration—to the IGB as the winning bidder. On March 15, 2004, the IGB selected this bid as the winning bidder. Following this process, the Attorney General of the State of Illinois commenced an investigation regarding the Isle of Capri Casinos, Inc. bid and its ability to operate the Debtor's casino.

39.     Thereafter, the Debtor worked with K&E LLP and its advisors to address the issues identified by the Attorney General of the State of Illinois regarding the Isle of Capri

13

Casinos, Inc. bid and to pursue confirmation of the Plan.  More specifically, in connection

therewith, K&E attorneys and paraprofessionals spent time, among other things:

> (i)    responding to and resolving informal objections to confirmation of the Plan and approval of the Disclosure Statement;

> (ii)   seeking approval of the procedures utilized to solicit acceptances in support of the Plan;

> (iii)  preparing and filing a supplement to the Plan, the Confirmation Order, and certain other Plan-related documents;

> (iv)   preparing and filing the Debtor's memorandum of law in support of approval of the Disclosure Statement and confirmation of the Plan and supporting declarations in support thereof;

> (v)    engaging in numerous telephone conferences with various parties, including the IGB, and their respective professionals in regards to confirmation of the Plan and approval of the Disclosure Statement;

> (vi)   researching and analyzing various issues related to confirmation of the Plan, including confirmation requirements under the Bankruptcy Code and certain securities and tax implications of the Plan; and

> (vii)  advising the Debtor on the conditions required to achieve the occurrence of the Plan's effective date.

40.    K&E's diligent efforts in support of confirmation of the Plan allowed the Debtor

to confirm a fully consensual plan of reorganization, which was confirmed on July 22, 2004.

### (a)    Fee/Employment Applications [Matter No. 13]

Total Fees:    $120,760.00
Total Hours:   353.60

41.    This Matter Category includes time spent by K&E attorneys and

paraprofessionals providing services related to ensuring the retention of the Debtor's other

professionals in the chapter 11 case.  Specifically, K&E attorneys and paraprofessionals spent

time assisting the Debtor in preparing retention applications and obtaining Court orders

approving the retention of Victor Casini and Walter Hanley as special counsel, as well as

Rothschild Inc. as the Debtor's investment banker and financial adviser in connection with the Debtor's successful sale of its assets pursuant to the Plan.

### (b)   K&E Fee Applications and Monthly Statement [Matter No. 14]

Total Fees:   $181,632.00
Total Hours:  736.70

42.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the retention of K&E as the Debtor's counsel. Specifically, K&E attorneys and paraprofessionals spent time preparing pleadings and a comprehensive conflicts analysis to secure Court approval of the Debtor's retention of K&E and implementing internal procedures to permit the continuous identification and analysis of potential new conflicts of interest.

### (c)   Leases Assumption and Rejection [Matter No. 15]

Total Fees:   $5,761.00
Total Hours:  21.80

43.     This Subject Matter includes legal services rendered to examine issues related to the Debtor's executory contracts and unexpired leases.  Among other issues addressed during the Fee Period, K&E attorneys spent time researching, analyzing, and renegotiating the Debtor's obligations under the Debtor's various executory contracts.

### (d)   Schedules/Statement of Financial Matters [Matter No. 16]

Total Fees:   $11,521.00
Total Hours:  33.80

44.     This Subject Matter includes time spent by K&E attorneys and paraprofessionals advising the Debtor and other advisors in connection with the preparation and filing of the Debtor's schedules of assets and liabilities, statements of financial affairs, and monthly operating reports, as well as updating such schedules and statements from time to time.

KE 41892452

###### (e)      Organizational and Administrative Pleading [Matter No. 17]

Total Fees:    $14,783.50
Total Hours:   45.30

45.      This Subject Matter includes the time K&E attorneys and paraprofessionals spent on the administrative and organizational pleadings filed in the chapter 11 case.  To the extent possible, K&E's paraprofessionals attended to these general administrative and organizational matters.

###### (f)      Administrative Proceedings [Matter No. 18]

Total Fees:    $105,657.50
Total Hours:   302.60

46.      This Subject Matter includes the time K&E attorneys and paraprofessionals spent on the administrative pleadings filed in the chapter 11 case.  To the extent possible, K&E's paraprofessionals attended to these general administrative matters.

###### (g)      Post-Confirmation / Consummation [Matter No. 19]

Total Fees:    $2,384,675.50
Total Hours:   5,298.20

47.      Following confirmation of the Plan on July 22, 2004, the Debtor, with the assistance of K&E LLP, undertook extensive efforts to consummate the Plan, which contemplated a merger and sale of the Debtor contemplated by the Plan.  As described herein, these efforts involved extensive discussions among the Debtor, the Committee, the Attorney General of the State of Illinois, and the IGB regarding the Debtor's proposed sale and certain issues related to the transfer of the Debtor's most valuable asset—its gaming license—to a successful bidder.  In November 2005, an administrative law judge revoked the Debtor's gaming license (its principal asset) due to, among other reasons, certain allegations regarding certain disclosures made by the Debtor's officers and directors to the IGB in connection with a request to move the casino from East Dubuque to Rosemont.  On February 13, 2008, the U.S. Trustee

16

filed a motion to dismiss or convert the Debtor's case to a liquidation under chapter 7 of the Bankruptcy Code due to the Debtor's inability to effect substantial consummation of the Plan. On March 19, 2008, the Court converted this case to liquidation pursuant to chapter 7 of the Bankruptcy Code.   On March 20, 2008, the U.S. Trustee appointed Frances Gecker as the chapter 7 trustee for the Debtor's estate.

**Actual and Necessary Expenses Incurred by K&E**

48.     As set forth in **Exhibit D** attached hereto, K&E has incurred a total of $271,175.81 in expenses on behalf of the Debtor during the Fee Period.   These charges are intended to reimburse K&E's direct operating costs, which are not incorporated into the K&E hourly billing rates.   K&E charges external copying and computer research at the provider's cost without markup.   Only clients who actually use services of the types set forth in **Exhibit D** of this Fee Application are separately charged for such services.   The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

**Reasonable and Necessary Services Provided by K&E**

**A.     Reasonable and Necessary Fees Incurred in Providing Services to the Debtor**.

49.     The foregoing professional services provided by K&E on behalf of the Debtor during the Fee Period were reasonable, necessary, and appropriate to the administration of the Debtor's chapter 11 case and related matters.

50.     Many of the services performed by partners and associates of K&E were provided by K&E's Restructuring Group.   K&E has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with nearly 100 attorneys focusing on this area of the law.   The attorneys at

17

K&E have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

51.     In addition, due to the facts and circumstances of the Debtor's chapter 11 case, attorneys from K&E's litigation, corporate, and tax groups were heavily involved with K&E's representation of the Debtor.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, K&E brings to the Debtor's chapter 11 case a particularly high level of skill and knowledge, which inured to the benefit of the Debtor and all stakeholders.

**B.     Reasonable and Necessary Expenses Incurred in Providing Services to the Debtor**.

52.     The time constraints imposed by the circumstances of the Debtor's chapter 11 case required K&E attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtor.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtor's businesses and ensure the orderly administration of its estate.  Consistent with K&E policy, and as further disclosed in the Retention Application, K&E attorneys and other K&E employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. K&E's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

53.     In addition, due to the location of the Debtor's businesses, co-counsel, creditors, and other parties in interest in relation to K&E's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of the Debtor's chapter 11 case required overnight delivery of documents and other materials.  The disbursements for such services are not included in K&E's overhead for the

18

purpose of setting billing rates and K&E has made every effort to minimize its disbursements in the chapter 11 case.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtor in the Debtor's chapter 11 case.

54.     Among other things, K&E makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, K&E regularly reviews its bills to ensure that the Debtor is only billed for services that were actual and necessary and, where appropriate, prorates expenses.

### K&E's Requested Compensation and Reimbursement Should be Allowed

55.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

19

(e)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.    K&E respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtor and its estate and were rendered to protect and preserve the Debtor's estate.  K&E further believes that it performed the services for the Debtor economically, effectively, and efficiently, and the results obtained benefited not only the Debtor, but also the Debtor's estate and the Debtor's constituents, at the time that such services were rendered.  *See In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (holding that "reasonableness" for purposes of section 330(a) depends on whether the serves were reasonable and beneficial to the estate at the time rendered); *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) (reversing district court order denying attorney's compensation application due to the fact that such services were not beneficial to the estate with the benefit of hindsight because the services were reasonable when rendered and "the professional is not to be penalized . . . for a discretionary judgment that later proves to have been mistaken").   K&E further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtor, its estate, and all parties in interest.

57.    During the course of the Debtor's chapter 11 case, K&E's hourly rates and corresponding rate structure utilized by K&E in the Debtor's chapter 11 case was equivalent to the hourly rates and corresponding rate structure used by K&E for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is

required.  K&E strives to be efficient in the staffing of matters.  These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in the Debtor's case.

58.    Moreover, K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.   Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

59.    In sum, K&E respectfully submits that the professional services provided by K&E on behalf of the Debtor and its estate during the Debtor's chapter 11 case were necessary and appropriate given the complexity of the Debtor's chapter 11 case, the time expended by K&E, the nature and extent of K&E's services provided, the value of K&E's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.   Accordingly, K&E respectfully submits that approval of the compensation sought herein is warranted and should be approved.

## Notice

60.    The Debtor has provided notice of this Fee Application to:  (a) the Office of the U.S. Trustee for the Northern District of Illinois; (b) Frances Gecker, in her capacity as Chapter 7 Trustee; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  K&E submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

61.    No prior application for the relief requested herein has been made to this or any other court.

21

KE 41892452

WHEREFORE, K&E respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit F**:  (a) awarding K&E compensation for professional and paraprofessional services provided during the Fee Period in the amount of $6,890,744.50, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $271,175.81, without prejudice to K&E's right to seek additional compensation for services performed and expenses incurred during the Fee Period; (b) authorizing and directing the Debtor to remit payment to K&E for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Chicago, Illinois
    Date: June 27, 2016            */s/ Marc Kieselstein* _____
                                       Marc Kieselstein,
                                       as President of Marc Kieselstein, P.C.,
                                       a Partner of Kirkland & Ellis LLP