# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 02 B 22977 |
| | ) | |
| | ) | |
| EMERALD CASINO, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |
| | ) | **Hearing Date: Sept. 13, 2016 @ 10:00 am** |
| | ) | **Objection Filing Deadline: Aug. 23, 2016** |
| | ) | |

## COVER SHEET FOR APPLICATION FOR
## PROFESSIONAL COMPENSATION

Name of Applicant: Drinker Biddle & Reath LLP

Authorized to Provide
Professional Services to: Official Committee of Unsecured Creditors

Date of Order Authorizing Employment: November 7, 2002 retroactive to November 1, 2002

Period for Which
Compensation is Sought: From May 1, 2006 through March 19, 2008

Amount of Fees Sought: $265,953.00

Amount of Expense
Reimbursement Sought: $849.72

Final Compensation is Sought: From November 1, 2002 through March 19, 2008

Final Amount of Fees Sought: $3,449,226.90

Final Amount of Expense
Reimbursement Sought: $74,602.15

85954426.4

This is an: **X** Interim Application **X** Final Application ___Application Pursuant to Court Order

If this is *not* the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed | Any Amount Disallowed or Ordered Withheld |
|---|---|---|---|---|
| February 25, 2003 | November 1, 2002 through December 31, 2002 | $321,460.79 | $314,924.79 | $6,536.00 |
| June 11, 2003 | January 1, 2003 through April 30, 2003 | $652,144.81 | $646,429.81 | $5,715.00 |
| October 3, 2003 | May 1, 2003 through August 31, 2003 | $548,637.94 | $540,552.94 | $8,085.00 |
| February 13, 2004 | September 1, 2003 through December 31, 2003 | $406,703.19 | $403,195.09 | $3,508.10 |
| June 2, 2004 | January 1, 2004 through April 30, 2004 | $365,415.39 | $365,324.89 | $90.00 |
| September 16, 2004 | May 1, 2004 through August 31, 2004 | $367,888.40 | $360,778.40 | $7,110.00 |
| June 7, 2005 | September 1, 2004 through April 30, 2005 | $211,996.86 | $209,250.86 | $2,746.00 |
| June 30, 2006 | May 1, 2005 through April 30, 2006 | $416,103.55 | $414,313.37 | $1,790.18 |

Applicant: Drinker Biddle &Reath LLP

Date: June 28, 2016

By: ___/s/ Timothy R. Casey___
Timothy R. Casey

2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Case No. 02 B 22977 |
| | ) | |
| | ) | Chapter 11 |
| EMERALD CASINO, INC., | ) | |
| | ) | Honorable Deborah L. Thorne |
| Debtor. | ) | |
| | ) | **Hearing Date: September 13, 2016 @ 10:00 a.m.** |
| | ) | **Objection Filing Deadline: August 23, 2016** |

**NINTH AND FINAL APPLICATION OF DRINKER BIDDLE & REATH LLP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors of Emerald Casino, Inc., (the "Committee"), pursuant to sections 330, 331 and 507(a)(1) of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure, respectfully requests that the Court award compensation and reimbursement of expenses to the Committee's counsel, Drinker Biddle & Reath LLP ("DBR"), for the reasonable and necessary legal services in the total amount of $265,953 and reimbursement for the actual and necessary expenses in the amount of $849.72, for the period from May 1, 2006 through March 19, 2008 (the "Ninth Period").[1] DBR further submits this Final Application for Allowance of Compensation and Reimbursement of Expenses, (the "Final Application") for final approval allowing compensation for the reasonable and necessary legal services in the total amount of $3,449,226.90 and reimbursement for the actual and necessary expenses in the amount of $74,602.15, for the period from November 1, 2002 through and including March 19, 2008, (the "Final Fee Period"). In support of the Application, DBR states as follows:

---

[1] Except for the preparation of this Application, DBR performed no services for the Committee after March 19, 2008.

85954426.4

## I. INTRODUCTION

1. On June 13, 2002, creditors of Emerald Casino, Inc. (the "Debtor") filed an involuntary petition under Chapter 7 of the Bankruptcy Code. The Court entered an order for relief on September 6, 2002, and stayed the effectiveness of that order until September 10, 2002. On September 10, 2002, upon the motion of the Debtor, the Court entered an order converting this case to a case under Chapter 11 of the Bankruptcy Code.

2. On November 1, 2002, the United States Trustee for the Northern District of Illinois appointed the Committee. The Committee consisted of the following members: Christopher B. Burke Engineering, Inc.; Mackie Consultants, LLC.; Estate of Walter Payton; and Albert W. Johnson. The Ex-officio members of the Committee were The Village of Rosemont and Ernest J. Ojeda. On November 7, 2002, the Court authorized the Committee to retain DBR as its counsel, retroactive to November 1, 2002.

3. On May 19, 2004, the Court entered an order confirming the Debtor's and Committee's Joint Fifth Amended and Restated Chapter 11 Plan. [Dkt. No. 1284] On July 22, 2004, the Court entered an order confirming the Debtor's and Committee's Joint Fifth Amended and Restated Chapter 11 Plan, as modified as of July 20, 2004 (the "Plan"). [Dkt No. 1364]

4. Effective January 1, 2007, Gardner Carton & Douglas LLP's name changed to Drinker Biddle & Reath LLP.

5. On March 19, 2008 the Court entered an Order converting this case under Chapter 11 to a case under Chapter 7. Subsequent to conversion of the case, Frances Gecker ("Trustee") was appointed trustee and continues to act in that capacity.

## II. PREVIOUS FEE APPLICATIONS

6. Pursuant to the Interim Compensation Order [Dkt. No. 150-1], DBR has

submitted eight interim fee applications (the "Interim Fee Applications")[2] and the Court has entered orders with respect to the Interim Fee Applications. By this application, DBR does not seek allowance of fees and expenses previously disallowed by the Court.

7.  <u>The First Interim Fee Application</u>: On February 24, 2003, DBR filed its First Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of November 1, 2002 through December 31, 2002 (the "First Interim Application"), in which it sought payment of fees in the amount of $312,722.50 and expenses in the amount of $8,738.29. [Dkt. No. 334] The First Interim Application is incorporated by reference herein. On March 18, 2003, the Court entered an Order allowing DBR $306,186.50 in fees and $8,738.29 in expenses. [Dkt. No. 387]

8.  <u>The Second Interim Fee Application</u>: On June 11, 2003, DBR filed its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of January 1, 2003 through April 30, 2003 (the "Second Interim Application"), in which it sought payment of fees in the amount of $633,358.50 and expenses in the amount of $18,786.31. [Dkt. No. 595] The Second Interim Application is incorporated by reference herein. On July 3, 2003, the Court entered an Order allowing DBR $627,871.50 in fees and $18,558.31 in expenses. [Dkt. No. 636]

9.  <u>The Third Interim Fee Application</u>: On October 3, 2003, DBR filed its Third Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of May 1, 2003 through August 31, 2003 (the "Third Interim Application"), in which it sought payment of fees in the amount of $536,514.00 and expenses in the amount of $12,123.94. [Dkt. No. 750] The Third

---

[2] The interim fee applications are available on the docket of the Bankruptcy Court for the Northern District of Illinois and are also available upon request from the undersigned.

Interim Application is incorporated by reference herein. On October 29, 2003, the Court entered an Order allowing DBR $528,429.00 in fees and $12,123.94 in expenses. [Dkt. No. 778]

10. <u>The Fourth Interim Fee Application</u>: On February 13, 2004, DBR filed its Fourth Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of September 1, 2003 through December 31, 2003 (the "Fourth Interim Application"), in which it sought payment of fees in the amount of $400,382.50 and expenses in the amount of $6,320.69. [Dkt. No. 942] The Fourth Interim Application is incorporated by reference herein. On March 9, 2004, the Court entered an Order allowing DBR $369,874.40 in fees and $6,320.69 in expenses. [Dkt. No. 971]

11. <u>The Fifth Interim Fee Application</u>: On June 2, 2004, DBR filed its Fifth Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of January 1, 2004 through April 30, 2004 (the "Fifth Interim Application"), in which it sought payment of fees in the amount of $356,822.50 and expenses in the amount of $8,592.89. [Dkt. No. 1330] The Fifth Interim Application is incorporated by reference herein. On June 21, 2004, the Court entered an Order allowing DBR $356,732.00 in fees and $8,592.89 in expenses. [Dkt. No. 1340]

12. <u>The Sixth Interim Fee Application</u>: On September 16, 2004, DBR filed its Sixth Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of May 1, 2004 through August 31, 2004 (the "Sixth Interim Application"), in which it sought payment of fees in the amount of $356,338.00 and expenses in the amount of $11,550.40. [Dkt. No. 1386] The Sixth Interim Application is incorporated by reference herein. On October 14, 2004, the Court entered an Order allowing DBR $349,506.00 in fees and $11,272.40 in expenses. [Dkt. No. 1397]

13.  <u>The Seventh Interim Fee Application</u>:  On June 7, 2005, DBR filed its Seventh Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of September 1, 2004 through April 30, 2005 (the "Seventh Interim Application"), in which it sought payment of fees in the amount of $208,299.00 and expenses in the amount of $3,697.86.  [Dkt. No. 1506] The Seventh Interim Application is incorporated by reference herein.  On June 28, 2005, the Court entered an Order allowing DBR $205,553.00 in fees and $3,697.86 in expenses.  [Dkt. No. 1543]

14.  <u>The Eighth Interim Application</u>:  On June 30, 2006, DBR filed its Eighth Interim Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Committee of Unsecured Creditors, for the time period of May 1, 2005 through April 30, 2006 (the "Eighth Interim Application"), in which it sought payment of fees in the amount of $412,161.50 and expenses in the amount of $3,942.05.  [Dkt. No. 1722]  The Eighth Interim Application is incorporated by reference herein.  On July 25, 2006, the Court entered an Order allowing DBR $412,161.50 in fees and $2,151.87 in expenses.  [Dkt. No. 1726]

15.  The following chart is a summary of the fees and expenses previously allowed by the Court:

|  | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed |
|---|---|---|---|---|
| First Interim Application (11/1/2002 – 12/31, 2002) | $312,722.50 | $8,738.29 | $306,186.50 | $8,738.29 |
| Second Interim Application (1/1/2003 – 4/30/2003) | $633,358.50 | $18,786.31 | $627,871.50 | $18,558.31 |
| Third Interim Application (5/1/2003 – 8/31/2003) | $536,514.00 | $12,123.94 | $528,429.00 | $12,123.94 |
| Fourth Interim Application (9/1/2003– 12/31/2003) | $400,382.50 | $6,320.69 | $396,874.40 | $6,320.69 |
| Fifth Interim Application (1/1/2004 – 4/30/2004) | $356,822.50 | $8,592.89 | $356,732.00 | $8,592.89 |
| Sixth Interim Application (5/1/2004 – 8/31/2004) | $356,338.00 | $11,550.40 | $349,506.00 | $11,272.40 |

85954426.4

|  | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed |
|---|---|---|---|---|
| Seventh Interim Application (9/1/2004 – 4/30/2005) | $208,299.00 | $3,697.86 | $205,553.00 | $3,697.86 |
| Eighth Interim Application (5/1/2005 – 4/30/2006) | $412,161.50 | $3,942.05 | $412,161.50 | $2,151.87 |
| **TOTAL through the Eighth Interim Period** | **$3,216,598.50** | **$73,751.63** | **$3,183,313.90** | **$71,456.25** |

None of these allowed fees and expenses have been paid to DBR.

### III. LEGAL STANDARD

16. Under section 330 of the Bankruptcy Code, attorneys applying for payment of fees and expenses bear the burden of demonstrating their services were "actual, necessary, and reasonable." In re Famisaran, 224 B.R. 886, 896 (Bankr. N.D. Ill. 1998). Section 330(a)(3) of the Bankruptcy Code sets forth the following non-inclusive factors that should be considered in awarding compensation: time, rates, the necessity and benefit of such services, whether the attorney efficiently performed the services given the nature, complexity, and importance of the problems addressed, and the reasonableness of compensation when compared to other attorneys in other cases.

17. In awarding fees under section 330 of the Bankruptcy Code, Bankruptcy courts in the Northern District of Illinois utilize the factors cited in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974):

> (1) time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4); the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the

6

professional relationship with the client; and (12) awards in similar cases.

In re Famisaran, 224 B.R. at 897.  Moreover, the Seventh Circuit Court of Appeals has held that attorneys in a bankruptcy must receive the same compensation as they would in performing similar services outside the bankruptcy context.  In re UNR Indus., Inc., 986 F.2d 207, 209-210 (7th Cir. 1993).

### IV.    SERVICES PERFORMED DURING THE NINTH PERIOD

18.    This Application with respect to the Ninth Period sets forth in detail the work performed by DBR during the Ninth Period, which is comprised of the following (i) Part IV describing the practical and legal issues encountered by DBR and the actions taken and results obtained by DBR on behalf of the Committee and (ii) Part V describing the manner in which DBR's fees and costs were calculated.

#### A.    General Case Administration

19.    DBR spent 13.10 hours at a cost of $5,031.00 attending to matters under this category.  Time billed to this matter includes administering, coordinating, and managing the Committee's role in the Debtor's Chapter 11 case including; (i) organizing the pleadings and documents and maintaining a central file; (ii) filing pleadings; (iii) reviewing general pleadings and case status; (iv) attending status and other hearings; (v) services related to the conversion of this case to Chapter 7 of the Bankruptcy Code and (vi) miscellaneous items that do not fit in any other category.  Detailed time entries showing the services provided in this category, the attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit A.

#### B.    Committee Meetings and Communications

20.    DBR spent 27.50 hours at a cost of $11,238.50 in communicating with

members of the Committee and other creditors. Time billed to this matter includes: (i) communicating with members of the Committee and other creditors regarding open issues and the status of the case, including ongoing litigation involving the Debtor; (ii) communicating with members of the Committee regarding possible claims the estate may pursue against the Illinois Gaming Board ("IGB") and the officers and directors of Debtor, extension of plan deadlines, Debtor's retention of special counsel, license status, sale of equipment and court opinions; (iii) arranging, preparing for and participating in telephonic meetings of the Committee; and (iv) preparing follow up communications with the Committee and its members. Detailed time entries showing the services provided in this category, the attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit B.

    **C.**    **Use, Sale, Lease of Real or Personal Property**

    21.    DBR spent 54.40 hours at a cost of $23,073.00 in connection with issues relating to the sale of certain electric generating equipment owned by the Debtor, the retention of an auctioneer to sell the equipment, researching possible violations, modification of the automatic stay relating to an alleged lien on the equipment, preparing for and attending court hearings and monitoring the Debtor's distribution of the sale proceeds. Detailed time entries showing the services provided in this category, the attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit C.

    **D.**    **Plan and Disclosure Statement**

    22.    DBR spent 17.20 hours at a cost of $8,545.00 in connection with issues relating to consummation of the Plan, including time incurred (i) analyzing the extension of bids relating to the Plan; (ii) analyzing the Debtor's post-confirmation status reports; and (iii) conferring with the Debtor with respect to the extension of Plan deadlines and status of suitability process. Detailed time entries showing the services provided in this category, the

8

85954426.4

attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit D.

### E. DBR Employment and Fee Applications

23. DBR spent 72.30 hours at a cost of $36,098.00 in preparing its Ninth interim and this Final Application in accordance with the procedures and standards of the Bankruptcy Code, the Bankruptcy Rules and the Court's Interim Compensation Order, including time spent on an ongoing basis ensuring conformity with the Bankruptcy Code and Rules and United States Trustee guidelines. Detailed time entries showing the services provided in this category, the attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit E.

24. The following chart reflects the total fees spent in this category for the entire fee period:

| **APPLICATION PERIOD** | **HOURS** | **FEES** |
|---|---|---|
| First Interim Application | 23.80 | $5,326.50 |
| Second Interim Application | 65.10 | $15,438.50 |
| Third Interim Application | 67.00 | $16,493.00 |
| Fourth Interim Application | 54.90 | $13,934.00 |
| Fifth Interim Application | 71.50 | $19,281.00 |
| Sixth Interim Application | 40.50 | $11,487.50 |
| Seventh Interim Application | 30.40 | $7,814.00 |
| Eighth Interim Application | 24.50 | $6,412.50 |
| Ninth and Final Application | 72.30 | $36,098.00 |

85954426.4

| APPLICATION PERIOD | HOURS | FEES |
|---|---|---|
| **TOTAL** | 450 | $132,285.00 |

**F.    Other Professionals' Fee Applications**

25.    DBR spent 15.20 hours at a cost of $6,982.50 in reviewing and analyzing other professional's fee applications and attending hearings on such applications. In this regard, DBR (i) reviewed and analyzed an application to retain Shefsky & Froelich LTD., as Debtor's Special Counsel in connection with the appeal of the IGB's order revoking the Debtor's gaming license; (ii) reviewed and commented on application to retain Hilco Industrial, LLC to sell certain equipment belonging to the Debtor; and (iii) prepared for and attended court hearings. Detailed time entries showing the services provided in this category, the attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit F.

**G.    Gaming Board Proceedings**

26.    DBR spent 360.10 hours at a cost of $174,985.00 relating to issues regarding the IGB and the IGB's efforts to revoke Debtor's gaming license. The Debtor was involved in a wide array of litigation with the IGB spanning several courts including (i) administrative proceedings with the IGB, (ii) the appeal of the IGB's revocation order to the Illinois Fourth District Court of Appeals, (iii) suits by the Debtor against the IGB in the Cook County Circuit Court relating to IGB's administrative procedures, (iv) claims asserted by the Debtor against the IGB in the Illinois Court of Claims, (v) an appeal to the 7th Circuit Court of Appeals to enforce the Plan, and (vi) efforts to require the IGB to comply with the mandate of the Illinois First District Court of Appeals to issue Debtor its gaming license. As counsel to the

10

Committee, DBR advised and consulted with the Debtor in these various litigations. DBR lawyers also sought alternative resolutions with IGB, including pursuing legislative alternatives.

27. Time in this category also includes work related to the Illinois Attorney General's lawsuit against the IGB in which the Attorney General sought to prevent the IGB from fulfilling its contractual obligations to Debtor and its creditors in the Plan. Time in this category includes but is not limited to (i) drafting an amicus brief to intervene in the 7th Circuit Court of Appeals relating to Debtor's lawsuit against the IGB; (ii) researching issues related to police powers and regulations; (iii) researching the legal requirements to operate a casino in Illinois; (iv) discussions with Debtor's counsel and analyzing issues relating to the appeal to the Illinois Fourth District Court of Appeals and implications on open litigation; (iv) reviewing and assisting the Debtor with its Fourth District Appellate brief; (v) analyzing the mandate of the First District Court of Appeals requiring the IGB to issue Debtor a gaming license and working with the Debtor's attorneys to resolve issues and implications regarding renewal of Debtor's license; (vi) meeting with Debtor regarding appellate oral arguments and attending oral arguments before the Illinois First District Appellate Court and the Seventh Circuit; (vii) reviewing pleadings filed by the statutory applications versus Debtor's officers and directors; (viii) review of various orders of trial and appellate courts; (ix) attending IGB monthly and special meetings; and (x) researching issues regarding the claims of the statutory applicants. Detailed time entries showing the services provided in this category, the attorney providing the service, the date the service was provided, the time incurred and the value of such time are set forth in Exhibit G.

## V. CALCULATION OF TIME AND FEES

28. All professional services for which compensation is requested herein, and all reimbursement for expenses incurred, have been for services directly related to these cases and were rendered for the benefit of the Committee and the Debtor's estate. No agreement or

11

85954426.4

understanding exists between DBR and any other person for the sharing of compensation received or to be received in connection with the Debtor's case (other than as disclosed or authorized pursuant to sections 327, 328, 330 and 331 of the Bankruptcy Code).

29. As set forth in the attached exhibits, DBR's attorneys and paralegals have spent 559.80 hours from May 1, 2006, to and including March 19, 2008, providing necessary legal services for the Committee. As a result, DBR seeks allowance of the reasonable value of professional services rendered by DBR to the Committee in this Chapter 11 case during the Ninth Period in the amount of $265,953 for actual, necessary legal services performed (see Exhibit H – Timekeeper Summary). The average hourly rate is $475.08.

30. In preparing this fee application, DBR has calculated the amount of time spent by each attorney and paralegal in performing actual and necessary legal services for the Committee. DBR attorneys and paralegals are identified by initials and last name. All attorneys and paralegals are identified by full name, title, year admitted to the bar and area of practice, where appropriate, in Exhibit I attached hereto. The data used came directly from computer printouts which are kept on each DBR client. The hourly rates charged are the hourly rates charged by DBR for comparable services to comparable clients. The rates during this Ninth Period for DBR attorneys were increased in the ordinary course of business. All services and expenses for which DBR requests compensation and reimbursement were performed and incurred on behalf of the Committee.

31. DBR has not included in this Application any (a) charges that are the result of unnecessary duplication of services, or (b) charges for services that were not either reasonably likely to benefit the Debtor's estate or necessary to the administration of the case. See 11 U.S.C. § 330(a)(4)(A). DBR worked to avoid duplication of efforts between parties, and in instances where more than one attorney billed for a project, there was need for multiple

12

85954426.4

attorneys' involvement. Courts have approved multiple representations in analogous circumstances. See, e.g., Berberena v. Coler, 753 F.2d 629, 633 (7th Cir. 1985); In re Washington Manufacturing Co., 101 B.R. 944, 949 (Bankr. M.D. Tenn. 1989); In re N-Ren Corp., 71 B.R. 488, 490-491 (Bankr. S.D. Ohio 1987).

32. To aid the Court in its review of this material, DBR has prepared its time exhibits by topic as presented in the attached Exhibits A-G.

33. DBR also incurred out-of-pocket expenses which are listed in the attached Exhibit J. The expenses consist of delivery services, photocopy (charged at $.15 per page for black and white; $1.00 per page for color) and photocopy costs for court documents.

34. No compensation has been promised to DBR other than as disclosed or approved by this Court. DBR certifies that there is no agreement between it and any other party regarding the sharing of fees except with DBR's principals, and DBR has not discussed or negotiated the amount of its fees with any party except its client. Finally, DBR represents that it is and remains a disinterested party and does not hold any adverse. Attached as Exhibit K is a summary of the total fees spent for each separate matter.

35. No compensation has been promised to DBR other than as disclosed or approved by this Court. DBR certifies that there is no agreement between it and any other party regarding the sharing of fees except with DBR's principals, and DBR has not discussed or negotiated the amount of its fees with any party except its client. Finally, DBR represents that it is and remains a disinterested party and does not hold any adverse relationship with this estate.

## VI.  SUMMARY OF FINAL FEE PERIOD

36. Also included in this Final Application is DBR's request for final allowance and approval of compensation for the reasonable and necessary legal services rendered and reimbursement of actual and necessary expenses for the Final Fee Period. The

13

principal activities performed by DBR on behalf of the Committee during the Final Fee Period have been categorized according to subject matter as set forth in previously filed Interim Fee Applications and in this Final Application.

37. During the Final Period DBR Attorneys and Paralegals have spent 9,346.80 hours from providing necessary legal services. The blended hourly rate is $371.56.

38. DBR's actual final request for compensation and reimbursement of expenses, which reflect the amounts disallowed by the Court, including any voluntary reductions taken by DBR, total $3,449,226.90 in fees and $74,602.15 in expenses.

39. No compensation has been promised to DBR other than as disclosed or approved by this Court. DBR certifies that there is no agreement between it and any other party regarding the sharing of fees except with DBR's partners, and DBR has not discussed or negotiated the amount of its fees with any other party except its client. Finally, DBR represents that it is and remains a disinterested party and does not hold any adverse relationship with this estate.

## VII. SUMMARY AND CONCLUSION

40. DBR seeks (i) allowance of all of its requested fees and expenses; and (ii) compensation of fees and reimbursement of expenses from the bankruptcy estate's funds.

WHEREFORE, the Committee respectfully requests that this Court enter an Order:

a. Granting DBR allowance of reasonable compensation for actual, necessary legal services for the Ninth Period of May 1, 2006, to and including March 19, 2008, in the amount of $265,953.00. Granting DBR allowance of reimbursement of actual, necessary expenses for the Ninth Period, in the amount of $849.72; and

b. Granting DBR allowance on a final basis of reasonable compensation for actual and necessary legal services from the Final Fee Period of November 1, 2002, to and

including March 19, 2008 (which includes the Ninth Period), in the amount of $3,449,226.90. Granting DBR allowance on a final basis reimbursement of actual, necessary expenses for the Final Fee Period (which includes the Ninth Period) in the amount of $74,602.15;

   c.  Authorizing and directing the Trustee to immediately pay DBR the unpaid balance of the total compensation and expenses requested herein for the Final Fee Period; and

   d.  Granting such other and further relief as the Court deems just and appropriate under the circumstances.

         Respectfully submitted,

         OFFICIAL COMMITTEE OF UNSECURED
         CREDITORS OF EMERALD CASINO, INC.

         By: /s/ Timothy R. Casey
           Timothy R. Casey

COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

DRINKER BIDDLE & REATH LLP
Timothy R. Casey (#618028)
191 North Wacker Drive
Suite 3700
Chicago, IL  60606-1698
Telephone:  (312) 569-1000

Facsimile:  (312) 569-3000

Dated:  June 28, 2016

15

85954426.4