**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| EMERALD CASINO, INC., | ) Case No.  02 B 22977 |
| | ) |
| Debtor. | ) Hon. Deborah L. Thorne |

## <u>NOTICE OF MOTION</u>

TO:  See attached list

      **PLEASE TAKE NOTICE** that on Thursday, June 30, 2022, at 9:00 a.m., the Trustee will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, and present the motion of Jenner and Block LLP as Special Counsel to the Trustee for **JENNER & BLOCK LLP'S FIFTH AND FINAL FEE APPLICATION**, a copy of which is attached.

      **This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitting. To appear and be heard on the motion, you must do the following:

      **To appear by video**, use this link: https://www.zoomgov.com. Then enter the meeting ID.

      **To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID.

      **Meeting ID and password.** The meeting ID for this hearing is 160 9362 1728 – no password required.  The meeting ID and further information can also be found on Judge Thorne's web page on the court's web site, www.ilnb.uscourts.gov.

      **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Dated:  June 8, 2022

                          FRANCES GECKER, not individually but as
                          Trustee for Emerald Casino, Inc.
                          By: */s/ Catherine L. Steege*
                               One of Her Attorneys

Catherine L. Steege (ARDC #6183529)
Keri L. Holleb Hotaling (ARDC #6272431)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654
Telephone:  312-923-2952
Facsimile: 312-527-0484

## <u>CERTIFICATE OF SERVICE</u>

I, Catherine L. Steege, certify that I caused a copy of the foregoing **Notice of Motion** and

**Jenner & Block LLP's Fifth And Final Fee Application** to be served upon all counsel of record

via e-mail through the Court's ECF notification system on June 8, 2022.


*/s/ Catherine L. Steege*

In re Emerald Casino
02 B 22977

<u>SERVICE LIST</u>

**<u>VIA ECF NOTIFICATION</u>**:

Allan V. Abinoja on behalf of Interested Party Illinois Gaming Board
aabinoja@atg.state.il.us, rrascia@atg.state.il.us;marnold@atg.state.il.us

R Scott Alsterda on behalf of Creditor Ungaretti & Harris LLP nka Nixon Peabody LLP
rsalsterda@nixonpeabody.com

Michael D Arnold on behalf of Interested Party Illinois Gaming Board
marnold@atg.state.il.us

Chirag G Badlani on behalf of Spec. Counsel Hughes Socol Piers Resnick & Dym Ltd
cbadlani@hsplegal.com,
gsantos@hsplegal.com;rortiz@hsplegal.com;mpiers@hsplegal.com;docketing@hsplegal.com;ge
ssler-ecfs notice@juralaw.net

Salvatore A Barbatano on behalf of Plaintiff The Village of Rosemont
sbarbatano@shawfishman.com, jhampton@shawfishman.com

Courtney E Barr on behalf of Interested Party Village Of Rosemont
cbarr@lockelord.com, chicagodocket@lockelord.com;;pwilliams@lockelord.com

William J. Barrett on behalf of Defendant Aaron Jaffe and Jeanette Tamayo, in Their Individual
Capacities
william.barrett@bfkn.com, mark.mackowiak@bfkn.com;ecf-
6ec602372536@ecf.pacerpro.com;william-barrett-bfkn-3622@ecf.pacerpro.com

David E Beker on behalf of Creditor Kevin Larson
dbeker@schwartzcooper.com,
rbendix@schwartzcooper.com;msmith@schwartzcooper.com;rnachman@schwartzcooper.com

Kristin L Carmichael on behalf of Defendant Herbert Holzman
kcarmichael@lymannielsen.com

Timothy R Casey on behalf of Attorney Drinker Biddle & Reath LLP
timothy.casey@faegredrinker.com

Erik W. Chalut on behalf of Attorney Kirkland & Ellis
echalut@kirkland.com, mjawor@loeb.com;chdocket@loeb.com

Barry A Chatz on behalf of Creditor Nicholas Boscarino
barry.chatz@saul.com, jurate.medziak@saul.com

Nathan F Coco on behalf of Defendant Beverly L. Flynn
ncoco@mwe.com

Jerome F Crotty on behalf of Spec. Counsel Clifford Law Offices PC
jcrotty@rieckcrotty.com, bhenry@rieckcrotty.com

John D'Attomo on behalf of Creditor Committee The Official Committee of Unsecured Creditors
jdattomo@nisen.com, cvernola@nisen.com

Amy E Daleo on behalf of Interested Party Village Of Rosemont
adaleo@cohonraizes.com

John S. Delnero on behalf of Creditor Donald F Flynn
jdelnero@pedersenhoupt.com, koblazny@pedersenhoupt.com

John S. Delnero on behalf of Defendant John P. McMahon
john.delnero@klgates.com, koblazny@pedersenhoupt.com

John Dougherty on behalf of Creditor Shaun Gayle
jmdocs@ameritech.net

Devon J Eggert on behalf of Creditor Chaz Ebert
deggert@bcblaw.net, pfoster@bcblaw.net

Frances Gecker
fgecker@fgllp.com,
fgecker@ecf.axosfs.com;csmith@fgllp.com;fgecker@iq7technology.com;ecf.alert+Gecker@title
xi.com

Frances Gecker on behalf of Attorney Joseph D Frank
fgecker@fgllp.com, csmith@fgllp.com

Harley J. Goldstein on behalf of Creditor Chaz Ebert
harleyg@restructuringshop.com, teresag@restructuringshop.com

David B. Goroff on behalf of Attorney Foley & Lardner LLP
dgoroff@foley.com, khall@foley.com

Gordon E. Gouveia on behalf of Creditor Walter P. Hanley
ggouveia@foxrothschild.com, orafalovsky@foxrothschild.com

David Gustman on behalf of Creditor Chaz Ebert
dgustman@freeborn.com, bkdocketing@freeborn.com

Cara A Hendrickson on behalf of Plaintiff Frances Gecker
chendrickson@hsplegal.com,
rortiz@hsplegal.com;mpiers@hsplegal.com;jkarsh@hsplegal.com;vcortez@hsplegal.com;mbarb
osa@hsplegal.com;mrowland@hsplegal.com;gsantos@hsplegal.com;docketing@hsplegal.com

Francis J Higgins on behalf of Defendant John P. McMahon
frank.higgins@klgates.com,
christina.danielkiewicz@klgates.com;todd.pentecost@klgates.com;kenneth.rechtoris@klgates.co
m;anthony.relys@klgates.com

Keri Holleb Hotaling on behalf of Plaintiff Frances Gecker
khotaling@jenner.com,
rgraham@jenner.com;docketing@jenner.com;mmatlock@jenner.com;dabelson@jenner.com

Andrew A Jacobson on behalf of 3rd Pty Defendant Richard Levy
ajacobson@bupdlaw.com, ssteinhauer@bupdlaw.com;mortiz@bupdlaw.com

Elizabeth L Janczak on behalf of Creditor Chaz Ebert
ejanczak@freeborn.com, bkdocketing@freeborn.com

Scott Kaplan on behalf of Creditor The Sherri Boscarino Trust
skaplan@cohonraizes.com, msiedlecki@pfs-law.com

Marc Kieselstein on behalf of Attorney Kirkland & Ellis
marc.kieselstein@kirkland.com, Gregory.pesce@kirkland.com

Michael B Kind on behalf of Creditor John P. McMahon
michael.kind@lockelord.com, karen.soto@lockelord.com;ChicagoDocket@lockelord.com

Micah R Krohn on behalf of Accountant Development Specialists Inc
mkrohn@fgllp.com, csmith@fgllp.com;mmatlock@fgllp.com;csucic@fgllp.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Theodore Low on behalf of Creditor Williams Montgomery & John Ltd
tjl@willmont.com, cbm@willmont.com;saf@willmont.com;janice@willmont.com

Theodore Low on behalf of Defendant Peer Pedersen, et al
tjl@willmont.com, cbm@willmont.com;saf@willmont.com;janice@willmont.com

John J Lynch on behalf of Creditor International Transport Systems, Inc.
jlynch@lynch4law.com,
sgregorowicz@lynch4law.com;r44065@notify.bestcase.com;flynch@lynch4law.com;ctovar@ly
nch4law.com

Kevin R Malloy on behalf of Debtor 1 Emerald Casino Inc
kmalloy@fordeltd.com, kbrubaker@fordeltd.com;kforde@fordeltd.com;jdriscoll@fordeltd.com

Kevin R Malloy on behalf of Defendant John P. McMahon
kmalloy@fordeltd.com, kbrubaker@fordeltd.com;kforde@fordeltd.com;jdriscoll@fordeltd.com

Bryan E. Minier on behalf of Creditor Peer Pedersen
bryan.minier@lathropgpm.com, maria.vargas@lathropgpm.com;sujey.lara@lathropgpm.com

Nicole Mueller on behalf of Claims/Noticing Agent K&L Gates LLC.
nicole.mueller@klgates.com, litigation.docketing@klgates.com

Jill L Nicholson on behalf of Plaintiff The Village of Rosemont
jnicholson@foley.com

Sven T Nylen on behalf of Attorney Kirkland & Ellis
snylen@beneschlaw.com, dblanton@beneschlaw.com

Megan Preusker on behalf of Creditor Estate of Donald F. Flynn
mpreusker@mwe.com

Mark E Rakoczy on behalf of Interested Party Skadden, Arps, Slate, Meagher & Flom LLP
mark.rakoczy@skadden.com, chdocket@skadden.com

Brian Raynor on behalf of Interested Party Village Of Rosemont
braynor@lockelord.com, docket@lockelord.com

Craig E. Reimer on behalf of Creditor Kevin F Flynn
creimer@mayerbrown.com, 2682298420@filings.docketbird.com

Christopher L. Rexroat on behalf of Attorney Ungaretti & Harris LLP
clrexroat@uhlaw.com

Peter J Roberts on behalf of Interested Party Shaw Gussis Fishman Glantz Wolfson &
Towbin LLC
proberts@cozen.com, peter-roberts-1301@ecf.pacerpro.com;cknez@cozen.com

Jeffrey M Schwartz on behalf of Attorney Gardner Carton & Douglas LLP
jschwartz@muchshelist.com, wballinger@muchlaw.com

Michael S. Shapiro on behalf of Interested Party Hopkins & Sutter
mss@tomlinsonshapiro.com, shapisto@hotmail.com

Sally Siconolfi on behalf of Creditor Committee American Express Tax and Business
Service Inc.
siconolfi.sally@arentfox.com

Aaron C Smith on behalf of Interested Party Village Of Rosemont
asmith@lockelord.com, chicagodocket@lockelord.com

William P Smith on behalf of Creditor Estate of Donald F. Flynn
wsmith@mwe.com

William P Smith on behalf of Respondent Donald F. Flynn 1993 Trust
wsmith@mwe.com

Miriam R Stein on behalf of Creditor The Sherri Boscarino Trust
mstein@gutnicki.com

Eric E. Walker on behalf of Respondent Midwest Gaming & Entertainment, LLC
ewalker@perkinscoie.com, Docketchi@perkinscoie.com,rleibowitz@perkinscoie.com,eric-walker-5530@ecf.pacerpro.com

Andrew E Weissman on behalf of Attorney Drinker Biddle Gardner Carton
Andy.Weissman@sfnr.com, olivia.fuentes@sfnr.com;docket@sfnr.com

Zane L Zielinski on behalf of Accountant Alan D Lasko
zzielinski@wfactorlaw.com, fax@zanezielinski.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| EMERALD CASINO, INC., | ) | Case No.  02 B 22977 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |

**COVER SHEET FOR APPLICATION FOR
PROFESSIONAL COMPENSATION**

Name of Applicant:   Jenner & Block LLP

Authorized to Provide
Professional Services to: Trustee

Date of Order Authorizing Employment:   November 12, 2008, effective as of October 7, 2008

Period for Which
Compensation is sought: October 21, 2020 through May 31, 2022

Amount of fees sought:  $1,475,756

Amount of Expense
Reimbursement sought:  $45.34

This is an:            Interim Application ___        Final Application   X

If this is not the first application filed herein by this professional, disclose as to all prior fee applications:  First Interim Fee Application dated 2/23/2016 (Bankr. Dkt. 2172); Second Interim Fee Application dated 10/5/2016 (Bankr. Dkt. 2223); Third Interim Application dated 04/24/19 (Bankr. Dkt. 2275); Fourth Interim Application dated 10/26/20 (Bankr. Dkt. 2440).

The aggregate amount of fees and expenses paid to the Applicant to date for services rendered and expenses incurred herein is:  $27,191,644.25.

Dated: June 8, 2022

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| EMERALD CASINO, INC., | ) | Case No.  02 B 22977 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |

## JENNER & BLOCK LLP'S FIFTH AND FINAL FEE APPLICATION

Frances Gecker, not individually but as chapter 7 Trustee for Emerald Casino, Inc. (the "**Trustee**"), respectfully requests, pursuant to 11 U.S.C. §§ 328, 330, and 331, that the Court enter an Order awarding final compensation to her special counsel, Jenner & Block LLP ("**Jenner**"), and reimbursement of their necessary and actual out-of-pocket expenses, and states:

## INTRODUCTION

1.     When this case converted, it was administratively insolvent. As a result of the work of the Trustee's special counsel, the Trustee collected approximately $114 million, eliminated approximately $6.2 million in administrative and priority claims and another approximately $42 million in unsecured claims held by the Debtor's insiders and related parties, settled those chapter 11 administrative and other priority claims that were not disallowed, paid general unsecured creditors a 75% distribution, and paid the settling female and minority investors in full. As set forth in this Application, Jenner along with its co-counsel, Hughes, Socol, Piers, Resnick & Dym Ltd. ("**HSPRD**") spent tens of thousands of hours on the estate's claims against Donald and Kevin Flynn and certain other insiders, including handling multiple appeals in the district court and Seventh Circuit as well as prosecuting extensive post-judgment collection efforts. This is Jenner's fifth application for compensation and seeks payment on the value of the claims which were eliminated as a result of special counsel's work plus a fee on the final payment collected from one of the defendants.

## BACKGROUND

2.      On June 13, 2002, certain creditors filed an involuntary bankruptcy petition against Emerald Casino, Inc. ("**Emerald**") seeking to have Emerald found to be a debtor in a case under chapter 7 of title 11 of the United States Code.

3.      On September 10, 2002, Emerald consented to the involuntary bankruptcy petition and converted the involuntary chapter 7 petition to a chapter 11 case, which bankruptcy case has been and remains pending in the United States Bankruptcy Court for the Northern District of Illinois as Case No. 02 B 22977 (the "**Bankruptcy Case**").

4.      In 2002, Emerald held the so-called "Tenth Riverboat License," which due to legislation that was passed in 1999 allowed Emerald to open a riverboat casino anywhere it wanted in the State of Illinois, including Cook County. Emerald was in the midst of an administrative hearing challenging the Illinois Gaming Board's decision to revoke Emerald's very valuable gaming License and the bankruptcy filing delayed that hearing for a number of years. Eventually after Emerald failed to abide by a settlement agreement, the administrative hearing resumed and the Administrative Law Judge Abner Mikva recommended revocation of the License. The IGB accepted Judge Mikva's recommendation. Emerald appealed to the Illinois Appellate Court and lost that appeal. The Illinois Supreme Court denied Emerald's petition for leave to appeal in December, 2007 and Emerald lost its License.

5.      On March 19, 2008, the Bankruptcy Court converted the Bankruptcy Case to one under chapter 7 of title 11 of the United States Code.

6.      On March 21, 2008, the United States Trustee appointed the Trustee as the interim chapter 7 trustee and the Trustee subsequently became the permanent case trustee.

7.      On November 12, 2008, the Bankruptcy Court authorized the Trustee to hire Jenner and HSPRD as her special counsel to bring litigation against Donald F. Flynn, Kevin F. Flynn, Peer Pedersen, Walter Hanley, Joseph McQuaid, John McMahon and Kevin Larson (collectively, "**Defendants**"). (Dkt. 2022.)

8.      On November 25, 2008, the Court entered an Order pursuant to 11 U.S.C. § 328, authorizing Jenner's and HSPRD's retentions on the same contingent fee basis for each firm. (Dkt. 2028.)   Specifically, the Order authorized that the Jenner was to receive 22.5% of the "recovery or consideration received on account of any claims brought against" the Defendants and that HSPRD was to receive 22.5% of the "recovery or consideration received on account of any claims brought against" the Defendants.

## SPECIAL COUNSEL'S SERVICES

### A.  Pre-Judgment Services

9.      On December 1, 2008, the Trustee filed suit against the Defendants, which suit was docketed as Adversary Proceeding Case No. 08 A 00972. The Trustee alleged that the Defendants breached a Shareholders' Agreement which obligated them to obey the Illinois Riverboat Gambling Act and the IGB's Rules. She also asserted a claim for breach of fiduciary duty and to disallow certain claims and to recharacterize or equitably subordinate other claims filed by the Defendants against the Emerald estate. The basis of the Trustee's lawsuit was the IGB's ruling and that of the Illinois Appellate Court both holding that the Defendants violated numerous IGB Rules resulting in the revocation of Emerald's very valuable gaming license.

10.      The litigation was very contentious and very lengthy. Jenner and HSPRD reviewed all of Emerald's files and those of the IGB and produced 21,439 pages of documents to the Defendants and participated in forty-two depositions. Prior to the trial held in the Bankruptcy

Court, the Bankruptcy Court considered and decided three motions to dismiss, five separate summary judgment motions, thirty-six separate discovery motions, and sixteen motions in limine, and other pre-trial motions. Defendants also filed four interlocutory appeals, which were fully briefed and denied before the trial began. In addition, the Bankruptcy Court required the filing of a pre-trial statement and numerous other pre-trial filings. The Bankruptcy Court also abstained from hearing certain assigned state law claims and HSPRD and Jenner represented the Trustee in the state court litigation.

11.     The Bankruptcy Court conducted a trial on eighteen days between November 1 and December 14, 2010. Following the close of the evidence, Jenner and HSPRD submitted extensive post-trial findings of fact and conclusions of law. Jenner and HSPRD also filed a reply to the Defendants' filings along with replies to sur-replies filed by the Defendants.

12.     After briefing was complete, Defendants moved to withdraw the reference and to recuse the Bankruptcy Judge presiding over the case. Jenner and HSPRD handled the briefing on those matters, which included two requests by the Defendants for a writ of mandamus from the Seventh Circuit.

13.     On January 31, 2012, the United States District Court for the Northern District of Illinois withdrew the reference of Adversary Proceeding Case No. 08 A 00972 and docketed the adversary proceeding in the District Court as Civil Case No. 11 cv 4714 (the "**Lawsuit**").

14.     Following the withdrawal of the reference, the District Court allowed the Defendants to file five post-trial summary judgment briefs on five different issues, which the District Court denied after full briefing. The parties also engaged in mediation during the summer of 2012. At the Defendants' request, the District Court also reopened the trial record and conducted seventeen days of additional evidentiary hearings between December 2012 and March

2013. Following the second trial, the Court allowed new post-trial briefing and also conducted a full-day of closing arguments in July 2013.

15.     On September 30, 2014, the District Court entered a 289-page Memorandum Opinion and Order ruling for the Trustee on her breach of contract claim against all of the Defendants except Peer Pedersen. (Distr. Dkt. No. 285). Specifically, in its September 30, 2014 decision the District Court ruled that each Defendant (other than Peer Pedersen) was liable to the Trustee on Count II of the Complaint for breach of the Emerald Shareholder Agreement and that the damages caused by the breach were $272,000,000.00. Although the District Court held that each Defendant was fully responsible for this loss, the District Court stated that it intended to enter judgment in the amount of $45,333,333.33 against each of the Defendants it found liable, but also ruled that no Defendant had a right of contribution from any other Defendant. The District Court further stated that it would rule for the Defendants on Count I (breach of fiduciary duty) and Count IV (equitable subordination of Defendants' Proofs of Claim).

16.     Following that decision, the District Court re-opened the briefing on the remaining counts of the Trustee's Third Amended Complaint. On April 21, 2015, the District Court issued a Memorandum Opinion and Order in which it stated it would enter judgment for the Trustee on Counts III (§502(d) disallowance) and Count VI (claims disallowance) and for the Defendants on Count V (recharacterization). (Dist. Dkt. No. 365.)  The District Court denied the Trustee's motion for a Rule 54(b) judgment and left open one affirmative defense related to only one defendant, Donald Flynn.

17.     While this additional briefing was taking place, Jenner, HSPRD, and the Trustee participated in mediation between December 2014 and January 2016 before the Honorable Magistrate Judge Jeffrey Gilbert.

18.    On November 4, 2015, the Trustee entered into a settlement agreement with
Walter Hanley pursuant to which he agreed to pay the Trustee $7 million over time and to
withdraw with prejudice his administrative and priority claims totaling $43,176.92 and
unsecured claims totaling $230,484.40.

19.    On January 13, 2016, the Trustee entered into a settlement agreement with the
Estate of Donald F. Flynn pursuant to which Mr. Flynn's Estate agreed to pay the Trustee
$45,333,333.33 and to withdraw his administrative claim to be repaid on account of his post-
petition loans to the estate in the amount of $4,971,162.00 and his unsecured claims against the
estate totaling $35,588,773.33. In addition, as a result of the settlement with Donald Flynn, the
following additional persons withdrew with prejudice their unsecured claims against the estate in
the following amounts: Robert Flynn ($155,362.00); Brian Flynn ($2,735,670.00); Michael R.
Flynn Exempt Trust ($55,557.00); and Patrick Flynn Exempt Trust ($55,557.00).

20.    The District Court withdrew the reference of both motions to approve those
settlements and entered orders on January 11, 2016 and February 11, 2016 approving those
settlements.

**B. Post-Judgment Appeal**

21.    On January 12, 2016, the District Court entered final judgments against the
remaining non-settling Defendants except Peer Pedersen. Those Defendants other than Peer
Pedersen appealed and the Trustee cross-appealed. The Trustee also appealed from the judgment
in favor of Peer Pedersen. Jenner and HSPRD handled the appellate briefing.

22.    On August 11, 2017, the United States Court of Appeals for the Seventh Circuit
affirmed its liability ruling. It granted the Trustee's appeal of the damage award and reversed the
District Court's ruling making damages divisible and instead held that each Defendant was

6

jointly and severally liable for the full amount of the damages. On October 17, 2017 the District

Court entered a joint and several judgment against the remaining defendants: the Estate of Kevin

F. Flynn, Kevin D. Larson, John P. McMahon, and Joseph F. McQuaid in the amount of

$272,000,000 less settlements made to date for a total of $219,666,666.66 (the "**Judgment**").

### C. Post-Judgment Collection Proceedings

#### 1. Citations Against Kevin Flynn's Estate

23.     Defendant Kevin Flynn died before judgment was entered. His widow, Susan F.

Flynn took the position that his estate was judgment-proof even though at the time of his death,

Kevin Flynn was the beneficiary of an alleged spendthrift trust holding substantial funds and

properties.

24.     In May, 2016, the Trustee initiated supplementary proceedings against Susan F.

Flynn, the Appointive Trust (the "**Appointive Trust**") as successor to the Kevin F. Flynn June,

1992 Non-Exempt Trust, and the Kevin F. Flynn June, 1992 Non-Exempt Trust ("**1992 Trust**")

and others to collect her Judgment against the Estate of Kevin F. Flynn (the "**Estate**").

25.     The supplementary proceedings against the Estate also were very contentious and

lengthy, taking two full years to obtain Kevin Flynn's financial and accounting records and to

piece together his complex financial life. To obtain all of Kevin Flynn's financial records, Jenner

and HSPRD were required to issue 45 citations to discovery assets to individuals and entities

who had financial records and other information about Kevin Flynn's financial affairs. Jenner

and HSPRD reviewed more than 493,000 pages of financial records and related documents and

participated in nineteen citation/fact depositions and seven expert depositions. In addition, as

occurred in the underlying case, the Trustee's counsel were required to file 10 motions to compel

and to defend against the Flynn Estate's motion to stay the citations and to prevent the Trustee from proceeding with her citations in the federal court.

26.    As a result of Jenner's and HSPRD's investigation on behalf of the Trustee, two assets were discovered and identified as available for distribution to creditors: (1) certain LKQ stock that transferred to Susan outside of probate upon Kevin's death; and (2) the assets in the alleged spendthrift trust.

27.    On August 11, 2017, Jenner and HSPRD filed on behalf of the Trustee a "Motion To Compel Turnover Of Property In Satisfaction Of Judgment and on February 1, 2018, the Trustee filed a "Renewed Motion For Turnover Of Fraudulent Transfer Of LKQ Stock" ("**LKQ Turnover Motion**"). After briefing and oral argument, on June 13, 2018, the Court granted the Trustee's turnover motion for certain options and restricted share units of LKQ stock or their cash equivalent and entered an order directing Susan to turnover such options and restricted share units of LKQ stock or their cash equivalent to the Trustee (the "**LKQ Stock Turnover Order**").

28.    Susan Flynn appealed the LKQ Stock Turnover Order. Following her appeal, Susan Flynn was required to deposit $2.1 million with the Clerk of the District Court for the benefit of the Trustee. This appeal was fully briefed and the Seventh Circuit heard argument on February 6, 2019. The appeal was under advisement at the time of the settlement with Susan Flynn.

29.    On June 4, 2018, Jenner and HSPRD on behalf of the Trustee filed a "Motion to Compel Turnover of the Assets of Kevin Flynn's Alleged Spendthrift Trust and For Entry of a Judgment against Susan Flynn" (the "**Trust Turnover Motion**"). In the Trust Turnover Motion, the Trustee alleged that the 1992 Trust was not a valid spendthrift trust and that Susan Flynn

should be required to turnover to the Trustee an amount equal to the value of the assets held in the 1992 Trust as of August 12, 2013, the date on which Kevin Flynn died.

30.      Contemporaneously with filing the Trust Turnover Motion, Jenner and HSPRD on behalf of the Trustee filed a Motion To Place Restrictions On Susan Flynn's Continued Dissipation of Assets And For Injunctive And Other Relief seeking to enjoin Susan Flynn from spending the 1992 Trust assets. During Jenner and HSPRD's investigation on behalf of the Trustee, the Trustee learned that Susan Flynn had violated the citation injunction. On June 11, 2018, the District Court entered an Order enjoining Susan from making any distributions from the Appointive Trust without prior approval of the Court.

31.      On July 30, 2018, Susan Flynn's adult children, Donald F. Flynn, Shannon E. Flynn and Brendan E. Flynn (the "**Flynn Adult Children**"), filed a motion to intervene in the case. (Distr. Dkt. 797.)  Jenner and HSPRD opposed the Motion on behalf of the Trustee. The District Court held a hearing on August 2, 2018 and denied the motion as untimely. (Distr. Dkt. 800.)  The Flynn Adult Children appealed. On January 2, 2019, the Appellate Court affirmed. (Appeal No. 18-2862; Dkt. 31.)  Jenner and HSPRD handled the appellate briefing.

32.      The District Court began an evidentiary hearing on the Trust Turnover Motion on January 15, 2019. In the midst of the evidentiary hearing, after the Trustee had presented the testimony of her two experts and of five adverse witnesses, Susan Flynn asked the Trustee to participate in a day of mediation which the parties did on February 8, 2019 before Magistrate Judge Gilbert. During that session, they reached an agreement in principle to resolve the matter.

33.      On March 4, 2019, the Trustee and Susan Flynn, in her various capacities, entered into a settlement agreement pursuant to which she agreed to pay the Trustee $50,500,000.00 and to withdraw with prejudice certain administrative and priority claims filed by Kevin Flynn and

9

his company Emerald Ventures Inc. totaling $211,704.57 and unsecured claims filed by Kevin

Flynn and Emerald Ventures Inc. against the estate totaling $3,520,682.62. On March 6, 2019,

the District Court withdrew the Trustee's Motion To Approve Settlement Agreement With Susan

F. Flynn, The Estate Of Kevin F. Flynn, And Related Parties and on April 1, 2019, the District

Court approved the settlement motion.

### 2.    Citations Against John McMahon

34.     On December 1, 2016, Jenner and HSPRD on behalf of the Trustee issued a

citation against John McMahon. Jenner and HSPRD examined McMahon and obtained financial

records from him. On April 13, 2017, the District Court entered an Agreed Order pursuant to

which Mr. McMahon has paid a portion of his monthly income to the Trustee each month. On

October 14, 2020, the District Court entered an Order approving a compromise with Mr.

McMahon pursuant to which he agreed to pay the estate an additional $75,000 in six monthly

installments starting on August 10, 2020 and to withdraw with prejudice his administrative and

priority claims against the estate in the amount of $919,522.50 and his general unsecured claims

in the amount of $161,712.87. In total Mr. McMahon has paid the Trustee $217,500.00.

### 3.    Citations Against Brian And Robert Flynn.

35.     As a result of discovery into Kevin Flynn's finances, the Trustee discovered that

Brian Flynn and his Trust had paid 1/3 of all of Donald and Kevin's Flynn's legal expenses

related to the Trustee's lawsuit and had paid 1/3 of all other Emerald-related litigation expenses

and settlements that Donald Flynn had made with various individuals other than the Trustee. As

a result, the Trustee issued citations to discover whether an indemnification agreement existed

that might be a source of recovery against which she could collect her judgment. As a result of

that citation, over the objection of Brian Flynn's counsel, the District Court ordered the

production of a Joint Defense Agreement related to the Trustee's lawsuit which referenced an indemnification agreement.

36.    The Trustee initiated discussions with Defendant Joseph McQuaid who acknowledged for the first time that there was an indemnification agreement and that he and the other defendants and the Flynns treated the indemnification covering the Payton Plaintiff litigation as covering the Trustee's lawsuit. Prior to Mr. McQuaid's acknowledgment of this fact, the Flynns and the other defendants affirmatively told the Trustee that there was no indemnification agreement covering the Trustee's lawsuit.

37.    With this acknowledgment and the financial discovery from the citations against Kevin Flynn, the Trustee understood that Brian Flynn was in fact obligated for 1/3 of the indemnification obligation. As a result she undertook efforts to secure the agreement of Mr. McQuaid and defendant Kevin Larson so that she could pursue indemnification in their names against Brian Flynn, and his trust and the trustee of his trust, Robert Flynn. Mr. McQuaid agreed to cooperate to mitigate his prior misrepresentations. Ultimately, Kevin Larson filed his own chapter 7 petition and one of the Trustee's lawyers was elected his trustee. The Emerald Trustee through her counsel participated in a Rule 2004 examination of Mr. Larson and drafted an adversary complaint objecting to the discharge of the judgment against him.

38.    Standing in the shoes of Mr. McQuaid and Mr. Larson, the Emerald Trustee and Kevin Larson's trustee made a demand on Brian Flynn to honor the indemnification agreement. The parties had several settlement conversations and ultimately agreed that they should mediate the dispute. The District Court referred the matter to Magistrate Judge Gilbert who negotiated a settlement of the claim for $10,750,000. In addition, Mr. McQuaid and the Trustee of the Larson estate withdrew with prejudice their priority claims totaling $102,649.04 and their unsecured

claims totaling $445,533.58. Brian Flynn had withdrawn his claims previously with prejudice as part of the Donald Flynn settlement. On October 14, 2020, the District Court approved the settlement.[1]

*** 

39.      As a result of Jenner's and HSPRD's work on behalf of the Trustee, the Trustee has collected a total of $113,810,833.33 and the caused the following claims to be withdrawn with prejudice against the estate in the following amounts[2]:

**Administrative Claims**
Donald Flynn DIP Loans          $4,917,162.00

**Priority Claims**

| | |
|---|---|
| Emerald Ventures (Claim 31) | $105,131.33 |
| Kevin Larson (Claim 58) | $59,472.12 |
| Walter Hanley (Claim 80) | $43,176.92 |
| John McMahon (Claim 100) | $919,522.50 |
| Joseph McQuaid (Claim 81) | $43,176.92 |
| Kevin Flynn (Claim 91) | $106,573.24 |
| **TOTAL:** | **$1,277,053.03** |

**Unsecured Claims**

| | |
|---|---|
| Emerald Ventures (Claim 31) | $66,524.38 |
| Kevin Larson (Claim 58) | $271,111.73 |
| Walter Hanley (Claim 80) | $230,484.40 |
| John McMahon (Claim 100) | $161,712.87 |

---

[1] Although the Brian Flynn payment was made to settle the Larson estate's claims, the Trustee of Mr. Larson's estate (Catherine Steege, one of the Trustee's counsel in the Emerald case) did not charge or seek trustee compensation on the Brian Flynn settlement amount because that would have had the effect of two trustee commissions being charged against the same funds. Had she done so, Jenner & Block would have received an additional fee of $345,750.00, which it voluntarily waived.

[2] The District Court disallowed with prejudice certain of the claims filed by Donald and Kevin Flynn and temporarily disallowed pursuant to 11 U.S.C. §502(d) the remaining claims filed by Donald and Kevin Flynn and the claims filed by the other Defendants (except Peer Pedersen). The settlements with all of the Defendants made the disallowance of claims pursuant to 11 U.S.C. §502(d) permanent. In the case of Donald Flynn who paid what was his judgment amount at the time in full, the withdrawal of his claims with prejudice and those of the other family members represented compensation to the estate above the judgment amount.

| | |
|---|---|
| Joseph McQuaid (Claim 81) | $174,421.85 |
| Kevin Flynn (Claim 91) | $3,454,158.24 |
| Brian Flynn (Claim 77) | $2,735,670.00 |
| Robert Flynn (Claim 74) | $155,362.00 |
| M. Flynn Trust (Claim 86) | $55,557.00 |
| Donald Flynn (Claim 87) | $35,588,773.33 |
| Patrick Flynn (Claim 92) | $55,557.00 |
| **TOTAL:** | **$41,901,717.68** |

## FEES REQUESTED

**A.      First, Second, Third, and Fourth Interim Applications.**

**1.   First Interim Application.**

40.      On February 16, 2016, the Estate of Donald F. Flynn paid its settlement payment of $45,333,333.33. On February 22, 2016, Walter Hanley paid the first installment of his settlement in the amount of $1,500,000.00. In addition, the Estate of Donald F. Flynn withdrew a chapter 11 administrative expense claim and Jenner sought partial compensation on that withdrawal on the amount of $3,050,372.00. Thus, in total, as of February 22, 2016, the Trustee had recovered consideration in the amount of $49,883,705.33 as a result of the services performed by Jenner and HSPRD. In addition, under the settlements, the Estate of Donald F. Flynn, certain Flynn related persons, and Walter Hanley withdrew additional administrative, priority, and general unsecured claims. Neither Jenner nor HSPRD sought compensation on the value of those claims withdrawals but stated that they would do when the value of those claims could be determined with accuracy.

41.      Pursuant to the Court's November 25, 2008 Order, on February 23, 2016, Jenner petitioned for compensation under its contingent fee agreement with the Trustee in the amount of $11,223,833.69 (22.5% of $49,883,705.33 received through February 22, 2016) plus reimbursement for its reasonable and necessary expenses. In a separate fee petition, HSPRD also sought fees in the same amount, plus reimbursement for its reasonable and necessary expenses.

13

On March 15, 2016, the Court awarded both firms interim compensation and reimbursement of their expenses. (Dkts. 2181, 2180.)

### 2.   Second Interim Application.

42.     On September 24, 2016, Walter Hanley paid the balance of his settlement, an additional $5.5 million in cash. On October 5, 2016, Jenner petitioned for compensation under its contingent fee agreement with the Trustee in the amount of $1,237,500 (22.5% of $5,500,000) plus reimbursement for its reasonable and necessary expenses. In a separate fee petition, HSPRD also sought fees in the same amount, plus reimbursement for its reasonable and necessary expenses. Mr. Hanley also withdrew certain administrative, priority, and unsecured claims against the estate. Neither Jenner nor HSPRD sought compensation on the value of those claim withdrawals, but stated that they would do when the value of those claims could be determined with accuracy. On November 9, 2016, the Court awarded both firms interim compensation and reimbursement of their expenses. (Dkts. 2226, 2227.)

### 3.   Third Interim Fee Application.

43.     On April 18, 2019, the District Court ordered that the $50,500,000 settlement payment due from Kevin Flynn be released to the Trustee from the clerk of court. (Distr. Dkt. 932.)   Additionally, since April 13, 2017, the Trustee has been garnishing the wages of Defendant John McMahon, and had collected a total of $84,375.00 to date. Pursuant to Jenner's contingent fee agreement, it was entitled to $11,381,484.38 in compensation on the cash paid to the estate (22.5% of $50,584,375.00 received through April 19, 2019). HSPRD also requested compensation in the same amount. The Estate of Kevin Flynn and Mr. McMahon also withdrew certain administrative, priority, and unsecured claims against the estate. Neither Jenner nor HSPRD sought compensation on the value of those claims withdrawals, but stated that they

would do when the value of those claims could be determined with accuracy. On May 23, 2019, the Court awarded both firms interim compensation and reimbursement of their expenses. (Dkts. 2289, 2291.)

### 4.  Fourth Interim Fee Application.

44.    On October 16, 2020, the Trustee received the $10,750,000 settlement payment from Brian Flynn. In addition, during the Compensation Period of the Fourth Interim Fee Application, the Trustee collected $95,625 from John McMahon. Pursuant to Jenner's contingent fee agreement, it was entitled to $2,440,265.62 in compensation (22.5% of $10,845,625.00 received through October 16, 2020). HSPRD also requested compensation in the same amount. In addition, under the settlement with Brian Flynn, the chapter 7 estate of Kevin Larson and Joseph McQuaid withdrew certain administrative, priority, and unsecured claims against the estate. Neither Jenner nor HSPRD sought compensation on the value of those claim withdrawals, but stated that they would do when the value of those claims could be determined with accuracy. On November 19, 2020, the Court awarded both firms interim compensation and reimbursement of their expenses. (Dkts. 2450, 2451.)

### B.  Fifth And Final Application

45.    On May 26, 2022, this Court authorized the Trustee to make a 75% distribution to general unsecured creditors. As a result, it is now possible to determine the value of the unsecured and priority claims that were withdrawn and disallowed as a result of the settlements set forth above. The Trustee agreed that the value of administrative and priority claims for purposes of the fee calculation should be set at 100% of the disallowed claim amount because administrative creditors and priority creditors have been paid in full and thus, had these claims not been disallowed, they would have been paid in full as well. With respect to the value of the

unsecured claims, the Trustee and her co-counsel agreed that there were a number of different ways to value those claims and agreed to select a value between the low number and the high number valuation. In addition, a small amount is due as a result of the final payment John McMahon made in December, 2020 in the amount of $37,500. Accordingly, Jenner has filed its Fifth Interim Fee Application, seeking compensation in the total amount of $1,475,756.00, consisting of the following components:

(1)  22.5% on $37,500 paid by Mr. McMahon after the Fourth Interim Fee application for a total fee of $8,437.50;

(2)  22.5% on the remaining amount of Donald Flynn's administrative DIP loan claim of $1,920,790 for a total fee of $432,177.75;[3]

(3)  22.5% on the amount of disallowed priority and administrative expense claims filed by the other Defendants totaling $1,277,053.03 for a total fee of $287,336.93; and

(4)  22.5% on the value of the disallowed unsecured claims totaling $41,901,717.68 for a total fee of $747,803.82 based on the value.[4]

HSPRD will file a fee application seeking payment of the same amounts. In addition, both firms request final approval of the interim fee awards received to date.

46.    Section 328(a) provides:

The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee

---

[3] In the First Interim Fee Application, both Jenner and HSPRD sought payment on account of $3,050,372 of the DIP loan disallowance, leaving $1,920,790 of DIP loan disallowance that was not part of that original calculation or paid as part of the first interim fee award.

[4] The Trustee's lowest method for calculating the value of the unsecured claims valued those claims at $2,678,554.76 and at the high end valued those claims at $4,006,090.31. The parties agreed to split the difference, resulting in total compensation, including fees due on account of the disallowed priority and administrative claims, of $2,951,512 for both firms, or $1,475,756 due to each firm.

> basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

47.     When a bankruptcy court approves a contingent fee under §328, the bankruptcy court should award that fee absent "intervening circumstances that were *incapable* of anticipation by the bankruptcy court *at the time it approved the award*." *In re Barron*, 325 F.3d 690, 694 (5th Cir. 2003) (emphasis added); *accord In re Gilbertson*, No. 06-C-610, 2007 WL 433096 at *5 (E.D. Wisc. Feb. 4, 2007) (holding that whether the eventual outcome of the litigation was "unanticipated" by the court is irrelevant; the test is whether the subsequent events were capable of being anticipated). Courts are hesitant to revise contingency fee agreements because "revisiting a preapproved contingency agreement ... would discourage others ... from undertaking similar high risk, complex, commercial litigation." *In re Merry-Go-Round Enter.*, 244 B.R. 327, 337-38 (D. Md. 2000).

48.     Here, both Jenner and HSPRD have earned their contingent fees in this case. In total, Jenner has spent 64,866.55 hours on prosecuting the Trustee's adversary proceeding to judgment and collecting the judgment. Both the litigation on the merits and the supplementary proceedings in this case were very contentious, with the Flynns and their representatives, taking the position that, despite their wealth, any judgments against them were uncollectable. The Trustee was faced with blatant misrepresentations about the Flynns' finances and obligations to the other defendants and numerous attempts to prevent the Trustee from discovering the true financial record. Just one example involved the existence of general ledgers for Kevin Flynn's trust. After being told no such documents exited and being forced to recreate a ledger of Kevin

Flynn's financial activity, during trial an accountant for a family member testified that she had in fact maintained ledgers on her computer. After being told for years that the Flynns had not indemnified the other defendants, the Trustee uncovered evidence showing otherwise. In short, Trustee's counsel has more than earned their fees in this case which has spanned twelve years, involved three multi-week evidentiary hearings, three appeals to the Seventh Circuit, two mandamus petitions, six appeals from the bankruptcy court to the district court, and massive amounts of discovery. The results they achieved were outstanding. The primary individuals who have worked on this matter during the course of this case are identified below:[5]

      a.      **Catherine Steege**. Ms. Steege is a partner in the Jenner's bankruptcy department. She is a 1982 graduate of DePaul University College of Law, a fellow of the American College of Bankruptcy, a member of the National Bankruptcy Conference, and has extensive experience trying complex adversary proceedings in bankruptcy cases. She has worked on this case since its inception and was lead trial counsel and argued all of the appeals in the Seventh Circuit.

      b.      **Keri Holleb Hotaling**. Ms. Holleb Hotaling has worked on this case since its inception and is a partner in Jenner's litigation department. She is a 2000 graduate of the University of Virginia School of Law. She has worked on this case since its inception, examining multiple witnesses and spearheading all discovery and collection litigation.

---

[5] Because this is a contingent fee case, the Court has previously excused counsel from the requirement of filing hourly time records which are extremely voluminous, would require heavy redactions, and are irrelevant to the contingent fee calculation. Exhibit A hereto lists the total hours spent by each professional on the case. Notwithstanding the fact that this is a contingent fee case, Jenner also has exercised billing judgment and is not reporting all of the hours its attorneys and paraprofessionals spent on this case, eliminating for example, hours for timekeepers who spent *de minimus* time on spot assignments, time spent by Jenner's technology and library staff, and certain other similar time entries.

      c.     **Robert Graham.** Mr. Graham was a partner in Jenner's litigation department and now is of counsel to the firm. He is a 1972 graduate of Harvard Law School. He worked on the case until he retired.

      d.     **John VanDeventer.** Mr. VanDeventer is an associate and is now of counsel at Jenner. He is a 2013 graduate of the University of Michigan Law School. He has worked on this case since the institution of collection proceedings.

      e.     **Scott De Nardo**. Mr. De Nardo was a department counsel in Jenner's litigation department. He is a 2001 graduate of Indiana University Maurer School of Law. He has worked on this case since the institution of collection proceedings.

### EXPENSES REQUESTED

49.    The following is a summary of the reasonable and necessary expenses that Jenner incurred in connection with its representation of the Trustee since its Fourth Interim Application:

| Description | Amount |
|---|---|
| PACER/Docketing Fees | $ 37.70 |
| Westlaw Research | $ 7.64 |
| **TOTAL** | **$45.34** |

50.    The following is a brief description of each of the categories of expenses incurred:

      a.  **PACER/Docketing Fees ($37.70)**:  Public Access to Court Electronic Records (PACER) fees charged for obtaining case and docket information online from the Bankruptcy Court and the District Court.

      b.  **Westlaw Research ($7.64)**:  Jenner charges each client only for the actual expenses it incurs when Westlaw is used on that client's behalf.

The detail is set forth in Exhibit B.

## REPRESENTATIONS AND NOTICE

51.     All of the services for which compensation is sought were rendered to the Trustee solely in connection with this case and not on behalf of any individual creditor or other person.

52.     Jenner has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

53.     Jenner has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive. No promises have been received by Jenner or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

54.     Jenner respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the administration of the Debtor's estate. Jenner further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Trustee.

55.     This is Jenner's fifth and final fee application. Jenner proposes that the fees it seeks be allowed and paid from the settlement amounts that the Trustee has received from the Defendants.

56.     The Trustee has provided 21-days' notice of the hearing on this Application to all creditors, shareholders, and counsel of record. Previously, the Court provided twenty days' notice of the hearing on the application to approve the contingent fee agreements with HSPRD and Jenner to all creditors, shareholders and counsel of record. She also provided twenty-one

days notice of the hearing to approve each of settlement agreements to all creditors, shareholders, and counsel of record.

## CONCLUSION

WHEREFORE Jenner respectfully requests that the Court enter an Order allowing interim compensation to Jenner for services rendered during the Compensation Period in the amount of $1,475,756.00 and $45.34 for reimbursement of actual, reasonable, and necessary expenses incurred during the Compensation Period, authorizing the Trustee to pay the amounts that are allowed, finally approving the prior interim fee awards, and granting such other relief as may be just or proper.

Dated: June 8, 2022

Respectfully submitted,

FRANCES GECKER, not individually but as Chapter 7 Trustee,

By:*/s/ Catherine L. Steege*
   One of her Attorneys

Catherine L. Steege (06183529)
Keri L. Holleb Hotaling (6272431)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Special Counsel to the Trustee*

21